UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-80980-Civ-Rosenberg/Brannon

SHIPPING AND TRANSIT, LLC,

      Plaintiff,

vs.

LENSDISCOUNTERS.COM, a
division of LD Vision Group, Inc.,

      Defendant.

_____/



## <u>REPORT & RECOMMENDATION</u>

THIS CAUSE is before the Court on Defendant's Motion for Attorney's Fees (DE 39), which has been referred for appropriate disposition (DE 49). For the reasons below, the Court recommends that this case be deemed exceptional under the Patent Act and that Defendant be awarded $36,317.50 in attorney's fees.

### I.    <u>BACKGROUND</u>

In this patent infringement case, Plaintiff alleges Defendant infringed four patents generally directed at tracking and reporting the location of a vehicle. On June 13, 2016, Plaintiff filed an eight-count Complaint alleging patent infringement and seeking undisclosed enhanced financial damages, including royalties, injunctive relief, attorney's fees, and costs. (DE 1). Plaintiff specifically requested a finding that "this is an exceptional case."[1] (DE 1 at 16).

Defendant answered by generally denying any violation of patent laws, asserting affirmative defenses, and raising eight counterclaims—four for declaratory non-infringement and

---

[1] As it relates to the current attorney's fee motion, Plaintiff now argues that the case is not exceptional. The irony of Plaintiff's shift in position is not missed by this Court.

four for declarations of patent invalidity. (DE 9). Defendant also sought an "exceptional case" finding under 35 U.S.C. § 285.

On August 22, 2016, the Court held a scheduling conference (DE 17) and ordered expedited initial discovery as follows:

> Defendant will provide Plaintiff with initial disclosures, which will consist of a list of all carriers used by Defendant from June 13, 2010 to the present. . . . Plaintiff will provide Defendant with a list of all of Defendant's carriers that are not licensed or only partially licensed as to the patents at issue in this case. For the carriers that are partially licensed, Plaintiff will provide Defendant with the licenses.

(DE 18 ¶ 1 & 2). The parties exchanged this initial discovery as instructed.

Meanwhile, Plaintiff answered the counterclaims on August 29, 2016 (DE 20) followed by the filing of a Covenant Not to Sue ("CNS") on September 14, 2016 (DE 22). Plaintiff then filed a motion to dismiss on September 16, 2016 (DE 23) that sought an involuntary dismissal based on the CNS. The Court originally denied Plaintiff's request for dismissal based on Defendant's objections to each party bearing their own costs and fees. However, the Court thereafter dismissed the claims and counterclaims upon unopposed motion. (See DE 28, DE 29, DE 30, DE 31). Prior to the Court's dismissal of the claims, Defendant filed a Local Rule 3.8 notice of pending or related lawsuits identifying ten active[2] and 315[3] closed patent infringement cases filed by Plaintiff and its predecessor ArrivalStar, S.A. (DE 27). Defendant now seeks an award of attorney's fees based on an exceptional case finding pursuant to 35 U.S.C. § 285. (DE 39).

---

[2] All ten active cases are now closed, four with stipulated dismissals, five by voluntary dismissal and one by way of a joint motion to dismiss. The court did not reach the merits in any of the ten cases.

[3] Defendant claims that none of the cases in this district have reached a decision on the merits. This point is undisputed.

## II.   PARTY POSITIONS

### A.   Defendant's Position

Defendant claims Plaintiff never intended to litigate this case.  (DE 39).   Defendant alleges that Plaintiff is a "patent troll" with "substantively infirm" patents who brought this (and other) "nuisance-litigation" in a "campaign" fashion for the sole purpose of extracting a "quick settlement." (*Id.*).   Defendant supports its "campaign" allegations by pointing out that Plaintiff has filed "over 150 cases in this district alone[4]" and has avoided any determination on patent validity by dismissing the actions before any merit determinations are made and filing covenants not to sue when counterclaims are filed. (*Id.*).  Defendant seeks an exceptional case ruling based on the "lack of substantive strength of S&T's litigating position" or for the "unreasonable manner in which the case was litigat[ed]." (DE 48).  Defendant argues an exceptional case finding is necessary to deter Plaintiff from continuing to file nuisance suits in the future. (DE 39).

### B.   Plaintiff's Position

Plaintiff counters the nuisance allegations by citing its right to protect its presumably valid patents. (DE 44).  Plaintiff proffers that it engaged in sufficient pre-filing investigation by presenting a 16-page demand letter to Defendant which included claims charts demonstrating the infringement.  (*Id.*).  Though Defendant responded as to the general invalidity of the patents, Plaintiff claims that Defendant did not proffer any claims charts comparing the claim to prior art. (*Id.*). After pre-suit negotiations failed, Plaintiff filed suit and once the Court-ordered initial discovery regarding the carrier/shipping companies was completed, Plaintiff "made a decision the case was not worth pursuing" and sought a dismissal.  (*Id.*).

---

[4] More precisely, Defendant's Notice of Related Cases (DE 27) identifies 325 patent infringement cases filed in this district by Plaintiff and Plaintiff's predecessor since 2015.

### III.   DISCUSSION

### A.   Legal Standard

The Patent Act permits courts to award reasonable attorney's fees in "exceptional cases." The statute's language is brief: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  As to the requisite prevailing party status, the Federal Circuit has concluded:

> [T]hat as a matter of patent law, the dismissal with prejudice, based on the covenant and granted pursuant to the district court's discretion under Rule 41(a)(2), has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court properly could entertain [] fee claims under 35 U.S.C. § 285.

*Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006). [5]

Turning next to the "exceptional" requirement, the term "exceptional" is not defined by statute.  Until recently, Federal Circuit case law provided, that an "exceptional" case required a clear and convincing showing  of "material inappropriate conduct" or an action "brought in subjective bad faith" that was also "objectively baseless."  *Brooks Furniture Mfg., Inc. v. Dutailier Int'l. Inc.*, 393 F.3d 1378, 1281 (Fed. Cir. 2005).  However, in 2014, the Supreme Court rejected *Brooks*, finding the "exceptional" standards to be "unduly rigid" and impermissibly encumbering of the statutory grant of discretion to district courts.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755 (2014).  The *Octane Fitness* court announced a new and more lenient standard for determining when a patent case is exceptional: "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the

---

[5] Federal Circuit law controls the issue of awarding attorney's fees in patent infringement cases pursuant to § 285.  *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001) ("[A]warding of attorney fees pursuant to 35 U.S.C. § 285 is an issue unique to patent law and therefore subject to Federal Circuit law.").

case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. *Octane Fitness* also replaced the "clear and convincing" evidence standard, with a "preponderance of the evidence" standard. *Id.* at 1758.

Now, courts may determine if a case is exceptional "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 1756. There is no precise or exact formula for determining what is or is not exceptional, but instead a district court should exercise equitable discretion. *Id. (citing Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994)).

In *Fogerty,* the Supreme Court interpreted a similarly worded attorney's fee provision in the Copyright Act and agreed that district courts could consider a "nonexclusive" list of "factors," including "frivolousness, motivation, objective unreasonableness" and the need to advance considerations of compensation and deterrence. *Fogerty,* 510 U.S. at 535, n. 19.

On the same day the *Octane Fitness* decision was released, the Supreme Court also decided *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,* 134 S. Ct. 1744 (2014). *Highmark,* changed the standard of review for § 285 fee determinations to "abuse of discretion" from its previous standard of *de novo.* The Supreme Court reasoned that while "questions of law may in some cases be relevant to the § 285 inquiry, that inquiry generally is, at heart, "rooted in factual determinations." *Id.* at 1749 (internal citations omitted).

Importantly, under Supreme Court precedent, a district court may award fees even if the losing party's positon was objectively reasonable if other considerations so warrant. *See Kirtsaeng v. John Wiley & Sons, Inc.,* 136 S. Ct. 1979, 1988 (2016). The broad range of "other considerations" include, but are not limited to, those factors listed in *Fogerty,* litigation misconduct, deterrence of repeated instances of infringement or overaggressive assertions of infringement. *Id.* at 1989. Though it is true objective reasonableness carries significant weight,

the court must view all circumstances and also consider the "objectives of the relevant Act" when determining if fees are warranted. *Id.*

**B.   Defendant is the Prevailing Party**

Though neither party addressed whether Defendant is a prevailing party, Defendant so qualifies.  Plaintiff filed a covenant not to sue accompanied by a move to voluntarily dismiss its claims with prejudice.  The Court's Order of dismissal with prejudice created "a judicially-sanctioned change" in the parties' legal relationship qualifying Defendant as the prevailing party. *See Highway Equip. Co.*, 469 F.3d at 1035-36.

**C.   This Case is Exceptional**

    *i.   Plaintiff's Reasons Why this Case Became "Not Worth Pursuing" Are Unavailing.*

At first blush, this case does not appear exceptional.  Indeed, a patent holder has a right to protect its valid patents.  In determining whether the case is exceptional, *Octane Fitness* instructs the court to look to the substantive strength of the parties' litigating positon and the manner in which the case was litigated.  Traditionally,  if a party has a valid claim to protect its patent, the substantive strength of its position will weigh against finding the case exceptional.   In this case, the substantive strength of either parties' litigating position was not fully meted out due to Plaintiff's early filing of a covenant not to sue accompanied by a request for dismissal.  The Court therefore focuses on the manner in which the case was litigated to make its determination. In this regard, the Court finds unreasonable the manner of Plaintiff's litigation as measured against Plaintiff's pattern and practice, as discussed more fully in the next section.

At the core of Plaintiff's infringement allegations is Defendant's alleged patent infringement by using "Shipment Tracking Alerts" directing its customers to Defendant's shippers (e.g. UPS, FedEx, and USPS) packaging tracking software. *See* Compl., DE 1, ¶ 11.  In response to Defendant's attorney's fee motion, Plaintiff argues that the unlicensed shippers used

by Defendant utilized tracking technology that infringed upon Plaintiff's patents.   However,

Plaintiff knew the identity of Defendant's five shippers because they were listed on Defendant's

website. (DE 44, p. 5). This point is uncontested. But, Plaintiff states its decision to sue rested

on the fact that Defendant "was under no obligation" to list its shippers and Defendant may have

other shippers that were not listed on the website which were not licensed to use the patents. In

Plaintiff's own words:

> "During the parties' cooperation with the Court's assistance [Defendant]
> identified the five carriers that they used for shipment of products, all five of
> which are listed on [Defendant's] website notwithstanding that it was under no
> obligation to list any or all of the carriers on their website. [Plaintiff], recognizing
> that three of the carriers were fully licensed and a fourth was partially licensed,
> and relying on [Defendant's] representation that there were no other carriers,
> made a business decision that the case was not worth pursuing."

(*Id.*).

This explanation is flawed.  Plaintiff admits that all five of Defendant's shippers were

listed on the website so it was aware and "recognized" *prior* to bringing the action that: three

shippers were licensed (UPS, FedEx, third unnamed); the forth shipper, the United States Post

Office ("USPS"), was partially licensed; and the fifth (unidentified) shipper was unlicensed. As

to the licensed shippers, Plaintiff has no infringement claim so that leaves potential claims only

as to the partially licensed USPS, and the unlicensed shipper.   Armed with that pre-suit

knowledge, Plaintiff decided to file suit. However, after the initial Court-ordered discovery

where Defendant disclosed the same five shippers, the case inexplicably became no longer worth

pursuing. [6]

This is so even though Plaintiff was at all times aware that the USPS was only a partial

"licensee" and did not have a license with respect to the '207 patent.  Such knowledge by

---

[6]  The explanation is further flawed as evidenced by the fact that Plaintiff's Complaint is devoid of any
allegations regarding infringement as it relates to Defendant's shippers.

Plaintiff, leads this Court to conclude that Plaintiff never intended to litigate to the merits regarding any shipments that Defendant may have sent using USPS or any shipment notifications Defendant may have sent to its customers.  Nothing revealed in the initial discovery could bear on the post-discovery decision that the case was not worth pursuing as to the USPS shipments or notifications.  It is more likely, that from the inception, Plaintiff never intended to litigate its patent infringement rights as they relate to Defendant's use of the USPS to ship its products.

As to the fifth unlicensed shipper, again, Plaintiff was fully aware pre-suit that Defendant used this unlicensed shipper.  Nothing in the initial discovery changed this fact.  If Plaintiff's motivation was to protect is patents, it would have continued its quest.  Indeed, it appears that Plaintiff brought this case merely to elicit a quick settlement from Defendant on questionable patents.[7]  This weighs in favor of finding this case exceptional.

ii.   **The Pre-Suit Demand Letter (DE 39-1) is Indicative of Plaintiff's Nuisance Value Settlement Motivation.**

The "motivation" factor announced in *Octane Fitness* also favors a finding that this is an exceptional case.  Plaintiff's pre-suit demand letter to Defendant is devoid of any discussion regarding the identity of Defendant's shippers.  (DE 39-1).  Yet, Plaintiff states, the identity of Defendant's shippers was the key factor in its reasoning that the case was not worth pursuing.  Further, the demand letter seeks payment of a $45,000 discounted "license fee." (DE 39-1, pg. 2, 15) (quotations in original).  The $45,000.00 "license fee" is indicative of a "nuisance value settlement."  Costs and fees in patent infringement cases routinely run in the six and seven

---

[7]   Regarding the questionable nature of Plaintiff's patents, just this week, a California District Court issued an opinion containing an in-depth analysis of Plaintiff's four patents at issue here and concluded that "all of the asserted claims … are drawn to patent-ineligible abstract ideas" and that such claims lacked "inventive concept sufficient to transfer the abstract idea into a patent-eligible invention." *Shipping & Transit, LLC v. Hall Enter. Inc.*, Case No. 16-06535-AG-AFM (C.D. Cal. Jul. 5, 2017) (filed as supplemental authority at DE 51).  The California court found Plaintiff's position in that case "objectively unreasonable" in light of applicable precedent as a significant factor weighing in favor of an "exceptional" finding under the Patent Act. *Id.*

figures.  The fees sought by Defendant in this case which was dismissed just over three months after it was first filed are in excess of $36,000.00.  That amount represents a mere fraction of what it would cost to defend this case to the merits.  *See Summit Data Sys., LLC v. EMC Corp.,* 2014 WL 4955689, at *4 (D. Del. Sept. 25, 2014), *aff'd sub nom. Summit Data Sys. LLC v. NetApp Inc.*, 620 F. App'x 955 (Fed. Cir. 2015) (finding plaintiff's practice of extracting settlements worth a fraction of what the case would cost to litigate supports a finding of exceptionality.)

Even when an exceptional case finding was set at the pre-*Octane Fitness* high bar of bad faith, the Federal Circuit found that "nuisance value settlements" may be used to determine if a case is exceptional.  *See Eon–Net LP v. Flagstar Bancorp,* 653 F.2d 1314, 1327–28 (Fed. Cir. 2011).  In *Eon-Net*, plaintiff and its related entities had filed "over 100 lawsuits" alleging infringement against a diverse group of defendants and each complaint was followed "by a quick settlement at a price far lower than the cost of litigation, a demand which most defendants apparently had agreed."  *Id.* at 1328. It is this Court's view that Plaintiff's motivation was to extract a nuisance settlement on the theory that Defendant would rather pay a "license fee" than be subjected to what Plaintiff described would be an "aggressively litigated patent infringement lawsuit."  *See* DE 39-1, pg. 12.

### iii.    *Plaintiff's Pattern and Practice Supports an Exceptional Case Finding Based on Deterrence.*

The "deterrence" factor announced in *Octane Fitness* likewise weighs in favor of an exceptional case finding.  Plaintiff has a demonstrated pattern and practice of filing and then quickly dismissing patent infringement cases in this district.  Since 2010, Plaintiff and its predecessor ArrivalStar, S.A. have filed over 325 cases in this district alone.  This Court could not find one case that where the substantive issue of patent validity was reached.  Many cases

were voluntarily dismissed within months of filing. Many others were dismissed by party stipulation after a defendant challenged the alleged infringement by asserting counter-claims challenging the validity of the patents.

Perhaps most telling, when the validity of the patents was challenged, Plaintiff routinely and promptly filed a covenant not to sue to end any inquiry. Just so in this case. In this Court's view, a plaintiff that genuinely seeks to invoke its protection rights under the Patent Act would eagerly litigate the validity issue, at least once, so a decision on the merits would emerge. That has not occurred in any of the hundreds of cases that Plaintiff filed. The boilerplate nature of Plaintiff's Complaint, the absence of a request for the identity of Defendant's shippers in the pre-suit demand letter, the unconvincing argument that the case became "not worth pursuing" after initial discovery, and the hundreds of substantially similar if not identical  lawsuits filed in this district, suggests that Plaintiff's strategy is predatory and aimed at reaping financial advantage from defendants who are unwilling or unable to engage in the expense of patent litigation. The need "to advance considerations of . . . deterrence" of this type of litigation behavior is evident and weighs in favor of an exceptional case finding. *See Octane Fitness,* 134 S.Ct. at 1756 n. 6 (quoting *Fogerty,* 510 U.S. at 534 n. 19)); *see also Shipping & Transit, LLC v. Hall Enter. Inc.,* Case No. 16-06535-AG-AFM (C.D. Cal. Jul. 5, 2017) (filed as supplemental authority at DE 51) (finding "a compelling need for deterrence and to discourage exploitative litigation" by this same Plaintiff after finding a "clear pattern of serial filings with the goal of obtaining quick settlements at a price lower than the cost of litigation and the intent to litigate even when Plaintiff should have realized it had a weak litigation position"). The totality of the circumstances lead the Court to conclude that this is an "exceptional case" under the Patent Act.

**D.     Attorney's Fees**[8]

The Court turns next to the amount of fees to award.  To make this determination, courts calculate the "lodestar" by multiplying the number of hours (tempered by billing judgment) spent in the legal work on the case by the reasonable market rate in the local area.  *Dillard v. City of Greensboro*, 213 F.3d 1347 (11th Cir. 2000).  The court may then adjust the lodestar "to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done."  *Id.*

Here, based on its review of Defendant's attorney's fee request, the Court finds the request reasonable.  As to the  first "lodestar" factor, a "reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable comparable skills, experience and reputation."  *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)).  The "relevant market" is "the place where the case is filed."  *ACLU v. Ga. of Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).  The fee applicant "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates."  *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).  Satisfactory evidence "at a minimum is more than the affidavit of the attorney performing the work . . . [and] must speak to rates actually billed and paid in similar lawsuits."  *Norman*, 836 F.2d at 1299.  A court may "rely on its own expertise" in

---

[8] The Court notes Defendant's argument that Plaintiff waived its right to object to an award of fees by not complying with Local Rule 7.3(b)'s conferral obligations before a motion for attorney's fees is filed. Importantly, these obligations are mandatory. *See Club Madonna, Inc. v. City of Miami Beach*, No. 13-23762-Civ-Lenard/Goodman, 2015 WL 5559894, at *9 (S.D. Fla. Sept. 22, 2015) (the "failure to comply with Local Rule 7.3 is grounds for granting the [moving parties] fees, if otherwise reasonable"), appeal dismissed, 2016 WL 723881 (11th Cir. Feb. 23, 2016).  Here, it is uncontested that Plaintiff did not comply with Local Rule 7.3(b).  And while there is no indication that Plaintiff was flippant in its failure to comply, the Court takes the opportunity to remind the parties of the rule's purpose in conserving resources for all concerned.  Because the Court is obligated to adjudge the reasonableness of the fee request, it will do so.

determining a reasonable hourly rate. *Id.* at 1304.   To recover non-local rates for an out-of-market attorney requires the fee applicant to show "a lack of attorneys practicing in that place who are willing and able to handle" the claims. *ACLU*, 168 F.3d at 437.

Defendant seeks the following hourly rates:

❖ $350.00 per hour for attorney Geoffrey M. Cahen of the West Palm Beach law firm of Cahen Law who has practiced law for over 10 years (33.75 hours)

❖ $350.00 per hour for attorney Jarod Bona, a California-based attorney who has practiced law for over 15 years (19.8 hours – discounted from regular rate of $575.00)

❖ $170.00 per hour for attorney Aaron Gott, a California-based attorney who has practiced law for 3 years (59.4 hours–discounted from regular rate of $270.00)

❖ $170.00 per hour for attorney Matthew Riley, an attorney who has practiced law for over 3 years (31.9 hours)

❖ $170.00 per hour for attorney Luis Blanquez an attorney with 10 years of experience in European Law and whose admission to the California bar remains pending (2.5 hours)

❖ $135.00/$90.00 per hour for legal assistant Gabriela Hamilton, who has over 16 years of experience (4.9 hours at $135.00 / 11.05 at $90.00)

To discern if a fee is reasonable or not, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).   Drawing on its own expertise, the Court finds the above requested hourly rates reasonable compared to the billing rates routinely charged in the Southern District of Florida.   The rates for the California firm, Bona Law Firm, PC, are similar or below the rates of local attorneys.   Moreover, the Court notes that the 19.8 hours billed by Mr. Bona, is significantly lower than those of his associate attorneys who performed the bulk of the work.   The associate attorney rate of $170.00 is in line with what this Court has previously awarded for associates with three years of experience.   The

$135 rate for 4.7 hours of legal assistant Gabriela Hamilton is a bit high for this district, however, the reduced rate of $90.00 for 11.05 hours is below the $125 this Court has found reasonable for legal assistants with similar experience.   On balance, the rates for Gabriela Hamilton are reasonable.

The second "lodestar" factor considered is the reasonable hours expended.   The court exercises its discretion in determining what constitutes reasonable hours.   *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997).   It is appropriate to exclude excessive, redundant, and unnecessary hours; hours which are inadequately documented; and hours which would be unreasonable for an attorney to bill the client or opposing counsel in the exercise of good billing judgment.   *See Duckworth*, 97 F.3d at 1397; *Norman*, 836 F.2d at 1301.   Here, the reasonableness of the hourly rates and the number of hours expended is supported by the expert affidavit of C. Corey Mauro, Esq.   (DE 39-2).   The Court agrees with this reasonableness assessment and computes the lodestar for a total of award of $36,317.50 as follows:

| **Attorneys /Staff** | **Hourly Rate** | **Hours** | **Total** |
|---|---|---|---|
| Geoffrey M. Cahen, Esq. | $350.00 | 33.75 | $11,812.50 |
| Jarod Bona, Esq. | $350.00 | 19.8 | $6,930.00 |
| Aaron Gott, Esq. | $170.00 | 59.4 | $10,098.00 |
| Matthew Riley, Esq. | $170.00 | 31.9 | $5,423.00 |
| Luis Blanquez, Esq. | $170.00 | 2.5 | $425.00 |
| Gabriela Hamilton | $90.00 | 11.05 | $994.50 |
| Gabriela Hamilton | $135.00 | 4.7 | $634.50 |
| **Total Fees** | | **163.1** | **$36,317.50** |

**E.      Award of Reasonable Fee**

The Court has carefully reviewed the attorney invoices submitted by Defendant (see DE 39-3 and DE 39-4), the Declaration of C. Cory Maura as to Attorneys' Fees and Costs (DE 39-2) and finds that they reflect reasonable billing rates and hours reasonably expended on the litigation. There is a "strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *see also Norman*, 36 F.2d at 1302. Under the totality of the circumstances, the Court finds this exceptional case warrants an award of attorney's fees to Defendant under 35 U.S.C. § 285. The Court thus recommends that Plaintiff be ordered to pay $36,317.50.

**F.      Attorney's Fees Expert**

Defendant also seeks to recover $1,000 in fees for its attorney's fees expert, Cory Maura, Esq. "Section 35 U.S.C. § 285 only authorizes a court to award reasonable attorney fees not expert witness fees." *See Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, No. 14-Civ-80651-Middlebrooks, 2015 WL 11401854, at *2 (S.D. Fla. Dec. 1, 2015), *aff'd*, No. 2016-1332, 2017 WL 1046223 (Fed. Cir. Mar. 20, 2017). Though the award of expenses is properly within the scope of § 285, fees for experts are considered a form of a sanction only allowable if there is fraud on the court or abuse of the judicial process. *See Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *accord Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008); *Amsted Indus. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994). Under the circumstances present here, the Court declines to recommend that Defendant be awarded its requested expert witness fees.

IV.    **CONCLUSION AND RECOMMENDATION**

The Court finds that Defendant, as the prevailing party, is entitled to recover its attorney's fees for the legal work performed in defense of this patent infringement lawsuit.  The Court is obligated and has ensured that such compensation is anchored in reasonableness.  Guided by the applicable legal standards, the Court **RECOMMENDS** that:

(1)    Defendant's Motion for Attorney's Fees (DE 39) be **GRANTED IN PART AND DENIED IN PART**;

(2)    Defendant be awarded **$36,317.50** in attorney's fees with post-judgment statutory interest to accrue in accordance with 28 U.S.C. § 1961.

V.    **NOTICE OF RIGHT TO OBJECT**

A party shall serve and file written objections, if any, to this Report and Recommendation with U.S. District Judge Robin L. Rosenberg, within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to file timely objections may limit the scope of appellate review of factual findings contained herein.  *See U.S. v. Warren*, 687 F.2d 347, 348 (11th Cir.1982), *cert. denied*, 460 U.S. 1087 (1983).

**DONE AND RECOMMENDED** in Chambers at West Palm Beach, Florida, this 10th day of July, 2017.

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE